IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| S. D., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 5:20-cv-00253-CHW |
| | : | |
| **COMMISSIONER OF** | : | Social Security Appeal |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals. As discussed below, this case must be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a reevaluation of the evidence relating to Plaintiff's mental functioning.

## BACKGROUND

Plaintiff applied for Title XVI disability benefits in October 2014, alleging disability due to "mental health, PTSD, anxiety[,] depression and … asthma." (R. 139, 247). After Plaintiff's application was denied initially and on reconsideration at the state-agency level of review, Plaintiff requested further review before an Administrative Law Judge (ALJ).

Plaintiff appeared for an initial hearing before a first ALJ in March 2018, whereupon Plaintiff testified that she was unable to work due, primarily, to the problems of "interacting with other people and comprehensive problem[s] — comprehending and just the memory[, i]t's just

1

hard to remember a lot of things." (R. 52). Plaintiff testified that she ordinarily treated these symptoms with the medications Seroquel, Prozac, and Gabapentin, but that she had had some difficulty affording the medications. (R. 54–55). Plaintiff also testified as to physical symptoms of grip weakness and radiating pain associated with a back surgery stemming from a 2015 motor vehicle accident. (R. 57–58).

A first ALJ issued an initial unfavorable opinion in April 2018 (R. 118–127), but the Appeals Council remanded Plaintiff's case for a renewed consideration of the evidence relating to Plaintiff's mental functioning, particularly a consultative psychological evaluation performed by Dr. John C. Whitley, Ph.D. (R. 134). On remand, a different ALJ conducted a second hearing in July 2019 (R. 32–43) and issued another unfavorable opinion in September 2019. (R. 15–26). The second ALJ assigned "little weight" to Dr. Whitley's opinion (R. 23) and determined that Plaintiff could perform simple work with no interaction with the public and no close teamwork with co-workers. (R. 20). In April 2020, the Appeals Council declined to conduct a second round of administrative review in Plaintiff's case. (R. 1).

Plaintiff now seeks judicial review on the basis that the second ALJ erred by (1) failing to find Plaintiff disabled under listing 12.05B, and by (2) providing a deficient evaluation of Dr. Whitley's opinion. For the reasons discussed below, a remand is warranted on Plaintiff's second ground for relief.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL RECORD

The available medical record begins in 2009, when Plaintiff sought primary care from Dr. David L. Turfler for COPD symptoms including a cough and congestion, which Plaintiff

managed with Klonopin. (R. 381). Contemporary records also record findings of anxiety and depression, for which Plaintiff treated first with Trazodone and then with Prozac. (R. 382–87).

The next available records show that Plaintiff sought treatment at Meadows Memorial Hospital in September 2013 for chest or epigastric pain, as well as nausea and vomiting. (R. 456). An imaging study revealed no signs of cardiopulmonary disease, (R. 464), and Plaintiff was discharged with instructions to treat with Zantac. Plaintiff returned to Meadows Memorial Hospital in November 2013 with complaints of right upper extremity pain, numbness, and tingling. (R. 451). An imaging study revealed nothing of note. (R. 449). When Plaintiff sought follow-up care for her arm impairment in January 2014, she was instructed to treat with ice applications and with a tennis elbow band as needed. (R. 448).

In September 2014, Plaintiff sought care at Appling Counseling or the Bulloch Counseling Center, where her mood, thought content, and emotional state were described as abnormal, "irrational," and "a wreck." (R. 394, 415). Plaintiff was diagnosed with major depressive disorder, severe in nature, recurrent in type, but without psychotic features. (R. 396, 418). The record indicates that Plaintiff then had transportation difficulties which impeded her ability to obtain care. (R. 419) ("Boyfriend refused to bring her, so she quit coming"). The record also memorializes Plaintiff's report that "my mom used to beat us," along with Plaintiff's concern that her mother, who now had custody over some of Plaintiff's children, might similarly abuse them. (R. 419) ("I fear what she is doing to my younger kids"). In October 2014, Plaintiff reported that she was "having homicidal thoughts about killing her mother," and that she "could go over there and blow her mother's brains out and spend just a few years in prison due to her having a severe mental health disorder." (R. 476). In February 2015, Plaintiff returned to Meadows Memorial Hospital for treatment associated with a "superficial fish hook impalement" to the left face. (R. 436–37).

Plaintiff had a consultative psychological evaluation with Dr. John C. Whitley, Ph.D., in April 2015. (Ex. 4F). Plaintiff was then treating with Effexor, Seroquel, and Gabapentin, and she reported first "taking medication for mental health issues at the age of 10." (R. 402). Dr. Whitley diagnosed Plaintiff with dysthymia, along with borderline intellectual functioning as evidenced by Plaintiff's borderline or extremely low IQ scores on testing with the Weschler Scale (WAIS – IV). (R. 405–06). Dr. Whitley found that Plaintiff's ability to "sustain effort, focus, pace, and persistence during an 8-hour workday with simple and routine … task[s] would be moderately impacted," that Plaintiff was "precluded from complex work instructions," that Plaintiff "would function best with solitary work task[s]," and that Plaintiff was "vulnerable to decompensate under anything more than simple levels of pressure, stress, change and demands." (R. 407).

In May 2015, Plaintiff sought care following a motor vehicle accident in which Plaintiff was an unrestrained passenger. (R. 578, 584). A battery of medical imaging studies revealed soft tissue swelling, a T-12 vertebral fracture for which Plaintiff underwent a fusion procedure, a rib fracture, and a C-7 vertebral facture. (R. 555–63). Plaintiff continued to report lingering leg numbness and lower back pain in February 2016, when she had a consultative physical evaluation performed by Dr. Christopher S. P. Valentine. (Ex. 6F). Dr. Valentine determined that Plaintiff would be moderately to severely impaired in her ability to bend, stoop, lift, walk, crawl, or squat, or to carry, push, or pull heavy objects. (R. 427).

The remaining available medical evidence documents Plaintiff's treatment at the Oconee Regional Medical Center in October 2016 for lower back pain, abdominal pain, nausea and vomiting. (R. 600). Plaintiff's symptoms were attributed, at least in part, to possible sepsis associated with a urinary tract infection. (R. 604). Finally, the record indicates Plaintiff received mental health treatment at the Oconee Medical Center in January and then June of 2017. (Ex. 9F).

The Oconee records show that Plaintiff reported "two attempts of suicides which [had] caused hospital admission" in 2004 and 2012 (R. 527, 538), along with a more recent inability to sleep. (R. 505). The Oconee records further indicate that Plaintiff was discharged from care "due to noncompliance with treatment" (R. 506), although it is not clear whether this discharge ultimately resulted from Plaintiff's transportation or financial difficulties.

## DISABILITY EVALUATION IN PLAINTIFF'S CASE

Following the five-step sequential evaluation procedure, the reviewing ALJ made the following findings in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least October 14, 2014, her application date. (R. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease with rods/spinal fusion, bipolar disorder, post-traumatic stress disorder, anxiety, chronic obstructive pulmonary disease (COPD), a history of alcohol and methamphetamine abuse in remission, and borderline intellectual function (BIF)." (R. 18).

At step three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18). Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform light work with exceptions:

> [T]he claimant can perform simple work only with no interaction with the general public and no close team work with co-workers. The claimant should perform no work with concentrated exposure to extremes of temperature, excessive humidity, or excessive pulmonary irritants.

(R. 20)

At step four, the ALJ found that Plaintiff had no past relevant work. (R. 25). At step five, however, the ALJ determined that Plaintiff could perform to the requirements of representative occupations including photo copy machine operator, mailing clerk, and silver wrapper. (R. 26).

Accordingly, based on this step five finding, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Before this Court, Plaintiff raises two arguments in support of a remand. First, Plaintiff contends that the ALJ erred in his assessment of Listing 12.05B ("intellectual disability"). Second, Plaintiff contends that the ALJ erred in his evaluation of the opinion of Dr. John C. Whitley, Ph.D. For the reasons discussed below, a remand is warranted as to Plaintiff's second argument.

**(1)** **Listing 12.05B**

Regarding Listing 12.05B[1] and Plaintiff's first ground for relief, the parties agree both that Plaintiff needed to satisfy three criteria to meet the listing and that Plaintiff satisfied the first such criterion by showing an IQ score of less than 70. *See* (R. 405) ("Full Scale IQ … 64 … Extremely Low"). The parties disagree on whether Plaintiff satisfied the listing's third criterion, whether Plaintiff's intellectual and adaptive impairments—as evidenced by her low IQ score—began prior to the age of twenty-two. Neither party has provided pertinent legal analysis. The parties simply assert, without authority, that Plaintiff's self-reporting as to her educational history either did or did not satisfy the requirement. Case law in the Eleventh Circuit suggests that Plaintiff's low adult IQ score creates the presumption, not yet rebutted, of a low adolescent IQ score. *See Hodges v.*

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05B required, in part:
1. Significantly subaverage general intellectual functioning evidenced by … a. a full scale (or comparable IQ score) of 90 or below ….
2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
    a. Understand, remember, or apply information;
    b. Interact with others;
    c. Concentrate, persist, or maintain pace;
    d. Adapt or manage oneself; and
3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001) ("a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning"). Based on this presumption, the Court also presumes that Plaintiff satisfied the listing's third criteria.

There is currently no indication that Plaintiff satisfied the second criterion for disability under Listing 12.05B, which requires a finding of either one extreme or two marked limitations in four domains of mental functioning. Plaintiff claims she had a marked limitation in the domain of understanding, remembering, and applying information, but the evidence Plaintiff cites in support, Dr. Whitley's opinion, appears instead to support the ALJ's finding that Plaintiff suffered from only a moderate limitation due to borderline intellectual functioning. (R. 19, 406). *Cf. Williams v. Comm'r*, 2019 WL 4280055 at *13 (N.D. Fla. Sept. 9, 2019). Similarly, Plaintiff claims she had a marked limitation in the domain of concentration, persistence, and pace, but Dr. Whitley expressly found that Plaintiff was only "moderately impacted" in her ability to "sustain effort, focus, pace, and persistence during an 8-hour workday with simple and routine types of task[s]." (R. 407). *Cf. Winschel v. Comm'r*, 631 F. 3d 1176, 1180–81 (11th Cir. 2011).

Dr. Whitley's opinion does not appear, therefore, to support a finding of disability under Listing 12.05B. Nevertheless, for reasons discussed below, a remand is warranted so that the Commissioner may reevaluate Dr. Whitley's opinion. That reevaluation may, in turn, bear upon Plaintiff's eligibility under Listing 12.05B. Accordingly, the Commissioner should also revisit the issue of Listing 12.05B on remand.

**(2)** **Dr. Whitley's Opinion**

The record supports Plaintiff's second argument, that the ALJ's treatment of Dr. Whitley's opinion was inadequate and warrants a remand. The ALJ's opinion suggests that he entirely

discounted Dr. Whitley's opinion by assigning it "little weight." In relevant part, the ALJ's opinion reads as follows:

> After consultatively examining the claimant, Dr. Whitley opined that the claimant could understand, follow, and process simple and routine types of directions (Exhibit 4F). She would function best with solitary work task[s] versus working directly with the public or [a] large number of coworkers. She appeared vulnerable to decompensate under anything more than simple levels of pressure, stress, change and demands during a typical eight-hour workday. She was able to communicate with others adequately. Her ability to sustain effort, focus, pace, and persistence with simple and routine types of task[s] would be moderately impacted. I give this opinion little weight because it was not entirely supported by Dr. Whitley's own exam finding and the severe limitations are inconsistent with the record as a whole. For example, the majority of the claimant's mental status exams showed that while she had a depressed mood and affect, she was also calm and cooperative, which supports that Dr. Whitley's findings regarding solitary work and decompensation are not consistent.

(R. 23)

The ALJ's treatment of Dr. Whitley's opinion is deficient for three overlapping reasons. First, the ALJ failed to satisfy the standard of clear articulation when discussing the import of Dr. Whitley's opinion. *See Winschel v. Comm'r*, 631 F.3d 1176, 1179 ("the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore"). Based on the ALJ's failure, the Commissioner now offers, in briefs to the Court, a revised assessment. According to the Commissioner, "[t]he ALJ essentially adopted the other portions of [Dr. Whitley's] opinion," while opting to discount only one, small finding by Dr. Whitley: that Plaintiff might decompensate under stress. (Comm'r Br., Doc. 11, p. 8). The Court may not accept the Commissioner's post-hoc rationales. *Dempsey v. Comm'r*, 454 F. App'x 729, 733 (11th Cir. 2011). If the ALJ in fact intended to credit all or most of Dr. Whitley's opinion, then the ALJ

should have clearly articulated that ruling, noting with particularity which of Dr. Whitley's findings, if any, were discounted and why.

Second, the ALJ's deficient treatment of Dr. Whitley's opinion is compounded by the ALJ's deficient treatment of the other available medical evidence bearing upon Plaintiff's mental status. Although the ALJ recounted some of the objective findings contained in notes from Plaintiff's treatment at Appling Counseling and from the Bulloch Counseling Center in late 2014 and early 2015, the ALJ did not assign weight to these records or otherwise interpret or explain their significance. Some of the findings suggest that Plaintiff suffered from significant mental impairments. For example, Plaintiff was diagnosed with a severe major depressive disorder, recurrent type (R. 396, 418), and Plaintiff's mood, thought content and emotional state all were found to be "abnormal," "irrational," or "a wreck." (R. 394, 415). The ALJ appears to have mischaracterized these records, which bolster rather than undermine Dr. Whitley's opinion, as showing only that Plaintiff's mental condition was "essentially normal." (R. 22). *Cf. Storey v. Berryhill*, 776 F. App'x 628, 636 (11th Cir. 2019) ("Despite having all of Storey's medical records, the ALJ mischaracterized the records as showing a history of 'routine and conservative' treatment").

Similarly, regarding later medical evidence documenting Plaintiff's treatment at the Oconee Medical Center in January and then June of 2017, the ALJ gave no clear articulation of the weight or significance of this evidence, while it is clear that the ALJ placed great emphasis on the fact that Plaintiff was "discharged from treatment … due to noncompliance." (R. 24). As to this latter point, both Plaintiff's hearing testimony and the medical record indicate that financial constraints impeded Plaintiff's ability to afford medication. *See, e.g.*, (R. 55) ("they started charging me and I didn't have the money to pay for it"). In general, "poverty excuses

noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Given the ALJ's failure both to address the issue of poverty and to explain the import of Plaintiff's Oconee Medical Center treatment records, these records also fail to provide substantial evidence supporting the ALJ's decision to discount Dr. Whitley's opinion.

Third and finally, the ALJ assigned "significant weight" (R. 25) to the opinions of state agency physicians, but those physicians' opinions cannot, alone, meet the standard of substantial evidence. *Storey*, 776 F. App'x at 635 ("The opinions of nonexamining, reviewing physicians … standing alone do not constitute substantial evidence"). The state agency physicians' opinions also fail, therefore, to provide adequate support either for the ALJ's decision to discount Dr. Whitley's opinion, or for the ALJ's mental RFC finding in general. Accordingly, because the ALJ provided a deficient evaluation of the medical evidence relating to Plaintiff mental functioning, Plaintiff's case must be remanded to the Commissioner for a reevaluation of that evidence.

## CONCLUSION

For the reasons discussed herein, the Commissioner's decision denying Plaintiff S.D.'s application for disability benefits is hereby **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should reevaluate the evidence relating to Plaintiff's mental functioning, providing a clear articulation of the weight assigned to that evidence, and the reasons therefore.

**SO ORDERED**, this 7th day of September, 2021.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge
